**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BOBBY ORICK,

 Petitioner,          Civil No. 2:06-CV-13287
                 HONORABLE LAWRENCE P. ZATKOFF
v.                UNITED STATES DISTRICT JUDGE

CARMEN PALMER,

 Respondent,
_____/

## OPINION AND ORDER GRANTING THE MOTION TO CHANGE RESPONDENTS, DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Bobby Orick ("Petitioner"), confined at the Michigan Reformatory in Ionia, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for first-degree murder, M.C.L.A. 750.316. For the reasons that follow, the Court will grant petitioner's motion to change respondents and deny the petition for writ of habeas corpus.

### I. Background

Petitioner and his co-defendant, Kahil Anton Green ("Green"), were tried together after a motion to sever was denied. Petitioner also had requested that the court not allow a confession by Green to be used against Petitioner, but the Court also denied that request. When Green's confession was read into the record at trial, Petitioner failed to object, request a limiting instruction or even make an objection. (Tr. 10/7/02, pp. 3-8). Both petitioner and Green took the stand and

1

testified at trial.[1]

## A. Green's Confession and Trial Testimony

Green's confession to the police was read into the record at trial. In his confession, Green told the police that he the shot victim after a discussion with several individuals, including petitioner, who spoke about Green "proving yourself," which to Green meant committing a murder. After that discussion, the men got in a car, drove to a bar, put some masks on, and "KO" pulled his shirt over his head. When a "fat guy" said, "Lets run in there and kill everyone," "KO" vomited. The men got back into the car and began talking about robbing "crackheads." The "fat boy" stayed at the house. While in the car, a man named Chris [Dean] told Green to shoot the victim. Chris, Green, and the victim exited the car by railroad tracks. Petitioner warned Green, "Don't punk out this time like you did at the bar or I will have to do it." The victim actually gave Green a 9 millimeter firearm and told Green to rob the first "crackhead." Chris motioned to Green and he shot the victim. After getting back into the car, petitioner and Chris told Green that the victim had to

---

[1] Respondent failed to provide this Court with the trial transcripts, although respondent did provide the records from petitioner's direct appeal before the Michigan Court of Appeals and the Michigan Supreme Court, as well as the various records from petitioner's state post-conviction proceedings. The habeas corpus rules require respondents to attach the relevant portions of the transcripts of the state court proceedings, if available, and the court may also order, on its own motion, or upon the petitioner's request, that further portions of the transcripts be furnished. *Griffin v. Rogers,* 308 F.3d 647, 653 (6th Cir. 2002); Rules Governing § 2254 Cases, Rule 5, 28 U.S.C. foll. § 2254. However, "if a transcript is neither available nor procurable, a narrative summary of the evidence may be submitted." *Griffin*, 308 F.3d at 653, n. 2. Although respondent failed to provide the transcripts, he did provide a narrative summary of the facts from the trial which petitioner has not disputed. Moreover, on habeas review, a district court need not examine the trial records if two conditions are satisfied: (1) the state court opinions summarize the trial testimony or relevant facts; and (2) the petitioner does not quarrel with that summary and instead contends only that the trier of fact should have reached a different conclusion. *See Clark v. Waller,* 490 F.3d 551, 556 (6th Cir. 2007). Petitioner does not dispute the state courts' factual summaries in their various opinions; he only contends that the state courts should have reached a different legal result. In view of issues presented by petitioner in his original and amended habeas petitions, it is not necessary for the Court to review the trial transcripts. *See e.g. Corbett v. Bordenkircher,* 615 F.2d 722, 727 (6th Cir. 1980). Moreover, based on the record and arguments before the Court, as well as the basis for the Court's rulings, even a review of the entire trial transcripts would not lead the Court to reach a different result.

be killed because they had shot someone and thought that the victim might inform the police about the murder. (Tr. 10/8/02, pp. 45-48).

At trial, Green testified that the confession was not his but that he was forced by the officer to sign the statement. (Tr. 10/9/02, pp. 71-88).

**B.      Petitioner's Statements to Police**

Petitioner made two statements to the police. In his first statement, petitioner denied any involvement in the murder. In a second statement to the police, petitioner told them that he, the victim, Chris Dean, and a guy named Tim were in Ferndale at Tara's house. The men discussed robbing someone. The men left Tara's house and went to Chris's house to obtain firearms. Chris, Tim, and "KO" went into a bedroom to talk while petitioner and the murder victim played X-Box. When the three exited the bedroom, they told the victim that he had to prove himself. When the victim indicated that he was ready, Chris gave a black and gray 9 millimeter Ruger to the victim. The men got into a car. Petitioner drove while Chris gave him directions. Petitioner stopped at a corner and let the other men out. Petitioner noticed a police car drive past him, heard shots, and watched the police car speed off toward Fort Street. Chris stood in the middle of the street motioning petitioner to pick them up. Chris, "KO," and Tim got in the car. "KO" had the same gun that the victim earlier had in his possession and told Chris it was jammed. The men informed petitioner that the victim ran. After they were in the car, everyone started laughing. When Chris and "KO" got out of the car, Chris gave "KO" a hug and said, "Look Bobby, I brought you a killer, I brought you a piece." "KO" bragged, "I popped that motherf-----." Tim complained that it wasn't fair because "KO" got to kill someone and he did not. Petitioner drove to his girlfriend's house in the victim's car. Petitioner told the police that he denied knowing the victim was going to be

3

murdered. But defendant did reveal that Chris had a plan to set up a crew of killers and noted that the victim did not want to just kill everyone. The victim was excluded from many conversations and was not trusted. The victim had earlier informed the other men he would not go with them to rob a bank if the other men were going to kill everyone in the bank.

Petitioner admitted to police that he had robbed a liquor store the previous Friday. During that robbery, Tim began shooting while petitioner grabbed the money and ran. The victim had been driving, while Chris sat in the front seat of the car and planned to shoot anyone that came out of the store with a shotgun. The money was split up at Chris's house. Some girls came over to Chris's house, and when some men came by to pick the girls up, everyone but the victim shot at those men. Everyone was mad that the victim had not shot at anyone. (Tr. 10/8/02, pp. 85-87).

### C.    Petitioner's Trial Testimony Regarding the Murder

Petitioner testified that he drove the shooter, whom he identified as "KO," to Delray, where the murder occurred. Petitioner denied that Green was "KO." Petitioner knew that "KO" was armed and there was talk about killing a "crackhead," but he did not believe that "KO" would murder the victim. (*Id.,* 89-145).

### D.    Testimony of Petitioner's Girlfriend and Petitioner's Testimony of What He Told Her

Petitioner's girlfriend, Kimberly Dedloff ("Dedloff"), testified that petitioner admitted committing a robbery on Friday, May 31, 2002. Petitioner had about two hundred dollars in his possession. Petitioner also told his girlfriend that he had given the go ahead for Chris to do something to the victim. (Tr. 10/8/02, pp. 109-12, 121-22). On Sunday, June 2, 2002, the day of the murder, petitioner asked Dedloff if he could use her cell phone to see if the victim was okay. Later that evening, petitioner, Dedloff, the victim, and others were at a house in Ferndale. When Dedloff

left at about 11:30 p.m. the others were still there, including petitioner and the victim. (*Id.,* pp. 112-15). On Monday, June 3, 2002, petitioner arrived at Dedloff's house driving the victim's car. Petitioner informed Dedloff that the victim had been shot in the head at Delray and was dead. Petitioner told Dedloff that he was the "get away driver" but denied pulling the trigger. Petitioner indicated that he and the other men told the victim they lost a gun at Delray and they had to find it. Petitioner told Dedloff there was a gun in the apartment that he had to get rid of. (*Id.,* pp. 115-17, 121, 123-26). Petitioner asked Dedloff to be his alibi and state that she had driven with him Sunday evening. Petitioner also wanted Dedloff to lie and say she had not seen Tim, Chris, or the victim that night. (*Id.,* pp. 127-28).

Petitioner later testified that he told Dedloff that he had given the go ahead to Chris, but explained that this referred to Chris breaking into his apartment that he shared with the victim to steal the victim's guns because his parole officer was going to come to the apartment five days later. Petitioner admitted telephoning Chris at 3:00 a.m. to check on the victim, but denied knowing that the victim might have been harmed or was going to be harmed. Petitioner admitted driving over to Delray knowing that the victim was armed with a gun and had discussed killing a "crackhead." (Tr. 10/9/02, pp. 89-118). Petitioner knew there was a plan to shoot someone. Petitioner confirmed that he told the police that the other men looked at the victim and "told him he had to prove himself by shooting a "crackhead." Petitioner admitted that he assisted the other men in the shooting by being the driver. (*Id.,* pp. 119-24).

**E.   Procedural History**

After a Wayne County Circuit Court jury convicted Petitioner of first degree murder, Petitioner filed an appeal as of right with the Michigan Court of Appeals. Petitioner's conviction

was affirmed on appeal. *People v. Orick,* No. 246801 (Mich.Ct.App. June 10, 2004); *lv. den.* 472 Mich. 882; 693 N.W. 2d 823 (2005)(Cavanagh, Kelly, and Markman, JJ. would grant leave to appeal). On June 28, 2006, petitioner filed a petition for writ of habeas corpus, in which he sought habeas relief on the one ground that he raised in the Michigan courts on his direct appeal.[2] Petitioner subsequently requested, on two occasions, that he be permitted to return to state court to present additional claims. On both occasions, the Court granted Petitioner's request. On August 27, 2013, this Court reopened the case and permitted petitioner to amend his habeas petition. In his original and amended habeas petitions, petitioner seeks habeas relief on the following grounds:[3]

> I. Petitioner's conviction should be reversed because the trial court erred in denying the motion to sever the trials.
>
> II. The prosecutor abused his charging authority by mischarging Petitioner as an aider and abettor in this first-degree murder case where the facts did not support such a theory and where the prosecutor lacked probable cause in violation of the Fourteenth Amendment's Due Process Clause.
>
> III. Admission of Green's confession at joint trial violated Petitioner's right to confrontation under the Sixth Amendment and *Bruton v. U.S.* and violated his right to a fair trial under the Fourteenth Amendment and *Arizona v. Fulminante* since the confession was highly incriminating and irreconcilable.
>
> IV. The prosecutor failed to meet its burden on the theory that Petitioner aided and abetted Green in the shooting of the deceased where his mere presence was not enough to establish aiding and abetting under due process in violation of the Fourteenth Amendment and *Jackson v. Virginia*.
>
> V. Petitioner was denied his Sixth Amendment right to the effective assistance of trial counsel for counsel's failure to raise the above issues contrary to the holding of *Strickland v. Washington.*

---

[2] Under the prison mailbox rule, this Court will assume that petitioner actually filed his habeas petition on June 28, 2006, the date that it was signed and dated. *See Towns v. U.S.,* 190 F. 3d 468, 469 (6th Cir. 1999).

[3] The Court has consolidated together the claims from petitioner's original and amended petitions and has renumbered the claims raised by petitioner in his amended petitions to reflect the consolidation.

VI. Petitioner was denied his Sixth Amendment right to the effective assistance of appellate counsel for counsel's failure to "federalize" the sole issue raised on direct appeal and for his failure to raise the above issues contrary to *Strickland v. Washington.*

VII. Petitioner demonstrates good cause for not being able to raise the above issues and actual prejudice stemming from the irregularities that support his claims for relief.

VIII. Based on *Presley v. Georgia*, 130 S.Ct. 721 (2010), Petitioner was denied his right to a public trial when the trial court barred the public from jury voir dire. Petitioner's counsel was ineffective for failing to object to this.

IX. Petitioner was denied the effective assistance of appellate counsel during his appeal as of right for not recognizing the *Presley* issue.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Discussion

#### A. The motion to change respondents.

Petitioner has filed a motion to change respondents. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *see also* Rule 2(a), 28 foll. U.S.C. § 2254. When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the Chippewa Correctional Facility where the warden was named Respondent Rapelje, but petitioner has since been transferred to the Michigan Reformatory. Therefore, the Court grants the motion and substitutes Michigan Reformatory Warden Carmen Palmer in the caption.

#### B. Claims 1, 3, 5, and 6. The joint trial claims and the related ineffective assistance of counsel claims.

The Court discusses petitioner's first, third, fifth, and sixth claims together because they are interrelated.[4]

---

[4] Respondent contends that petitioner's second through ninth claims are barred by the one year limitations period contained in 28 U.S.C. § 2244(d)(1) because he raised them in amended habeas petitions that were filed after the one year limitations period expired and do not relate back to the claim raised by petitioner in his original habeas petition. Although the Court agrees that several of petitioner's claims are time-barred, *see* Section C, *infra*, the Court believes that petitioner's *Bruton* claim and his related ineffective assistance of trial and appellate counsel

8

Petitioner contends in his first claim that he was deprived of a fair trial when the judge refused to sever his trial from that of Green. Petitioner claims that he should have been tried separately from Green because their statements to the police were mutually irreconcilable. A criminal defendant is not entitled to a separate trial merely because he might have had a better chance for acquittal in a separate trial, *Zafiro v. United States*, 506 U.S. 534, 540 (1993), nor does a criminal defendant have a right to a separate trial merely because the defendant and the co-defendant present antagonistic defenses. *Stanford v. Parker,* 266 F. 3d 442, 458 (6th Cir. 2001). The Supreme Court, in fact, has indicated that "[M]utually antagonistic defenses are not prejudicial *per se.*" *Zafiro,* 506 U.S. at 538. A court should grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. A habeas petitioner who seeks habeas relief on the basis of a state trial court's failure to sever his trial from his co-defendant's trial bears a very heavy burden. *Stanford,* 266 F. 3d at 459. Joinder of defendants for trial is the preferred course, which creates a presumption in favor of joinder that must be overcome by the party seeking severance. *See Foster v. Withrow,* 159 F. Supp. 2d 629, 641 (E.D. Mich. 2001).

The Michigan Court of Appeals rejected petitioner's severance claim:

The defenses presented by Orick and Green did not warrant separate trials under the *Hana* standard. Orick's argument incorrectly focuses on the alleged irreconcilability of his and Green's statements to the police, rather than their overall defenses. Orick admitted driving the car in which the murder victim was taken to the place where he was shot. His defense was that he did not know beforehand that the victim was going to be killed. Green's defense was that he was not the "K.O." that shot the victim. Green further testified that the assertions in the statement he signed were not his, but those of the police, and that he signed the statement under

---

claims share a "common core of operative facts" with petitioner's first claim, such that they would relate back to the date that petitioner's original habeas petition was filed, for purposes of § 2244(d), and would therefore be timely. *See Cowan v. Stovall,* 645 F. 3d 815, 819 (6th Cir. 2011).

>coercion. These defenses are not irreconcilable, antagonistic, or mutually exclusive. In fact, Orick testified that Green was not the "K.O." mentioned in his statement. Consequently, it was not an abuse of discretion for the trial judge to deny Orick's motion for a separate trial.

*Orick,* Slip. Op. at p. 2. (additional internal citation omitted).

Petitioner is also not entitled to habeas relief on his claim because he has failed to show that he and Green had mutually antagonistic defenses. Petitioner's defense (that the evidence established at most that he was merely present and did not know that a murder was going to take place) was not antagonistic to Green's defense that he was not the "K.O." who shot the victim. Petitioner has therefore failed to show that his defense and Green's defense were mutually antagonistic or irreconcilable. The jury still could have believed either theory or even both theories based on the evidence presented. *See United States v. Carter*, 760 F.2d 1568, 1574 (11th Cir. 1985) (alibi defense and mere presence defense to drug conspiracy charges not irreconcilable). Further, there has been no showing that Green's defense was "predicated solely on" petitioner's guilt. Green's defense theory was that he was not involved in the shooting. Green also repudiated his statement to the police, which had incriminated petitioner. The jury was free to believe that Green was not involved in the murder and that petitioner's mere presence at the crime scene, regardless of who committed the murder, was insufficient to convict him as an aider and abettor. Antagonistic defenses occur "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Harris,* 9 F. 3d 493, 501 (6th Cir. 1993). Because petitioner has failed to show that Green's defense was irreconcilably antagonistic to his own, petitioner is not entitled to relief on his first claim.

In his third claim, petitioner contends that the admission of Green's out-of-court statement to the police at their joint trial was contrary to the holding in *Bruton v. United States*, 391 U.S. 123,

10

127-28 (1968), where the Supreme Court held that a defendant is denied the constitutional right of confrontation where a <u>non-testifying</u> co-defendant's incriminating confession is admitted at a joint trial.

Petitioner's *Bruton* claim fails because Green testified at trial and was subject to cross-examination. Where a co-defendant takes the stand at a joint trial in his own defense, denies making an alleged out-of-court statement which incriminates the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, there is no violation of the defendant's Sixth Amendment right to confrontation. *See Nelson v. O'Neil,* 402 U.S. 622, 629-30 (1971). Because Green testified at the joint trial and petitioner had the opportunity to cross-examine him, petitioner's *Bruton* claim is without merit. *See United States v. Morrow,* 977 F. 2d 222, 225 (6th Cir. 1992)(internal citations omitted).

In his fifth claim, petitioner appears to argue that his trial counsel was ineffective for failing to object to the admission of Green's out-of-court statement to the police as a *Bruton* violation or for requesting a cautionary instruction.[5] To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under

---

[5] The Court is assuming that this is the argument that petitioner is raising in his fifth claim because he made this argument in his motion for relief from judgment. [See this Court's Dkt. # 34-3].

the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The admission of Green's out-of-court statement did not violate the holding in *Bruton,* thus, trial counsel's failure to object to its admission or to request a cautionary instruction on this basis did not amount to ineffective assistance of counsel. *See U.S. v. Johnson*, 581 F. 3d 320, 328 (6th Cir. 2009).

In his sixth claim, petitioner contends that his appellate counsel was ineffective for failing to "federalize" his separate jury trial claim and for failing to raise his *Bruton* claim or his related ineffective assistance of trial counsel claim on his direct appeal. The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court-appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). This Court has already determined that petitioner's first, third, and fifth claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). In particular, petitioner has failed to show that appellate counsel's alleged failure to "federalize" his first claim was ineffective because even if the claim had been presented as a federal claim to the state courts, the claim is without merit. *See Burger v. Prelesnik,* 826 F. Supp. 2d 997, 1012 (E.D. Mich. 2011). Because none of petitioner's claims can be shown to be meritorious, appellate counsel was not ineffective in his handling of

12

petitioner's direct appeal. Therefore, petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

### C. Petitioner's remaining claims are barred by the statute of limitations.

Respondent contends that petitioner's remaining claims—which petitioner raised for the first time in his first and second amended petitions for writ of habeas corpus—are barred by the one year statute of limitations contained within 28 U.S.C. § 2244(d)(1). Respondent contends the amended petitions were filed more than one year after petitioner's conviction became final, and the claims raised in the amended petitions do not relate back to the claim raised by petitioner in his original habeas petition.[6]

Under the AEDPA, a one year statute of limitations shall apply to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court. *See Corbin v. Straub,* 156 F. Supp. 2d 833, 835 (E.D. Mich. 2001). The one year statute of limitation shall run from the latest of:

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the

---

[6] The Court recognizes that it granted petitioner permission to file the amended habeas petitions. This does not preclude respondent from raising a statute of limitations defense to these claims. A statute of limitations defense to a habeas petition is not "jurisdictional," thus, courts "are under no obligation to raise the time bar *sua sponte*." *Day v. McDonough*, 547 U.S. 198, 205 (2006). The Court granted petitioner permission to amend his habeas petitions without making any determination as to the timeliness issue. The fact that this Court granted petitioner permission to file his amended petitions does not preclude respondent from raising a limitations defense to the claims raised in those petitions. *See Quatrine v. Berghuis,* No. 2:10–CV–11603; 2014 WL 793626, * 2-3 (E.D. Mich. February 27, 2014)*;Soule v. Palmer,* No. 08–cv–13655; 2013 WL 450980, * 1-3 (E.D. Mich. February 5, 2013). Although respondent could have filed an opposition to petitioner's prior motions to amend his petitions, he was not required to do so under Fed. R. Civ. P. 8 until he filed an answer to the amended petitions. *See Young v. Greiner,* No. 9:02-CV-1087; 2008 WL 5432219, * 9 (N.D.N.Y. December 30, 2008).

13

>    Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). A petition for writ of habeas corpus must be dismissed where it has not been filed within the one year statute of limitations. *See Holloway v. Jones,* 166 F. Supp. 2d 1185, 1187 (E.D. Mich. 2001).

Petitioner's direct appeal of his conviction ended when the Michigan Supreme Court denied petitioner leave to appeal on March 31, 2005, following the affirmance of his conviction by the Michigan Court of Appeals on direct review. Petitioner's conviction would become final, for the purposes of the AEDPA's limitations period, on the date that the 90-day time period for seeking certiorari with the U.S. Supreme Court expired. *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). Petitioner's judgment therefore became final on June 29, 2005, when he failed to file a petition for writ of certiorari with the U.S. Supreme Court. *Holloway*, 166 F. Supp. 2d at 1188. Petitioner filed his original habeas petition on June 28, 2006, with only one day remaining under the statute of limitations. Petitioner did not file his first motion to stay the petition until February 26, 2007, over two hundred days after the limitations period had elapsed on June 29, 2006.

When a habeas petitioner files an original petition within the one-year deadline, and later presents new claims in an amended petition that is filed after the deadline passes, the new claims will relate back to the date of the original petition only if the new claims share a "common core of operative facts" with the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005). None of petitioner's remaining claims raised for the first time in his amended habeas petitions share a "common core of operative facts" with the severance claim raised in his timely filed original habeas

14

petition.[7]  Because none of petitioner's remaining claims raised in the amended petitions share a common core of operative facts with the claim raised in the original petition, those claims are barred by the one year limitations period. *See Pinchon v. Myers,* 615 F. 3d 631, 643 (6th Cir. 2010).

Petitioner asserts that the one year statute of limitations should be tolled on his eighth and ninth claims because they are based on *Presley v. Georgia,* 558 U.S. 209 (2010).[8]  In *Presley*, the Supreme Court held that a criminal defendant's Sixth Amendment right to a public trial was violated when the public was excluded from the *voir dire* of prospective jurors.  The Court finds that *Presley* does not toll the limitations period for Petitioner's eighth and ninth claims, however, because "it has been well-established since at least 1984 that the closure of a courtroom during jury selection may violate a defendant's constitutional rights." *Silva v. Roden,* 951 F. Supp. 2d 222, 226 (D. Mass. 2013)(citing *Presley*, 558 U.S. at 212-13 (citing *Press–Enterprise Co. v. Superior Court of Cal., Riverside Cty*., 464 U.S. 501 (1984), and *Waller v. Georgia*, 467 U.S. 39 (1984)).

The AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010).  A habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way'" and prevented the timely filing of the habeas petition. *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  The Sixth Circuit has observed that "the doctrine of equitable tolling is used sparingly by federal courts." See

---

[7] The Court, of course, determined that petitioner's third, fifth, and sixth claims shared a common core of operative facts with his first claim and concluded that they were not barred by the AEDPA's statute of limitations. *See* Section B, *supra.*

[8] 28 U.S.C. § 2244(d)(1)(C) provides that the one year limitations period can run from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been <u>newly</u> recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

*Robertson v. Simpson*, 624 F. 3d 781, 784 (6th Cir. 2010). The burden is on a habeas petitioner to show that he or she is entitled to the equitable tolling of the one year limitations period. *Id*. Petitioner is not entitled to equitable tolling of the one year limitations period because he has failed to argue or show that the circumstances of his case warranted equitable tolling. *See Giles v. Wolfenbarger,* 239 Fed. Appx. 145, 147 (6th Cir. 2007).

The one year statute of limitations also may be equitably tolled based upon a credible showing of actual innocence under the standard enunciated in *Schup v. Delo,* 513 U.S. 298 (1995). *McQuiggin v. Perkins*, 133 S. Ct. 192, 1928 (2013). The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare[.]" *Id.* "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup*, 513 U.S. at 329). For an actual innocence exception to be credible under *Schlup*, a habeas petitioner must support his or her allegations of constitutional error "with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner's case falls outside of the actual innocence tolling exception enunciated in *Schlup* because petitioner has presented no new, reliable evidence to establish that he was actually innocent of the crime charged. *See Ross v. Berghuis,* 417 F. 3d 552, 556 (6th Cir. 2005). Further, petitioner's sufficiency of evidence claims [Claims 2 and 4] cannot be considered by this Court in determining whether an actual innocence exception exists for purposes of tolling the statute of limitations period. *Grayson v. Grayson,* 185 F. Supp. 2d 747, 752 (E.D. Mich. 2002).

### IV. Conclusion

For the foregoing reasons, the Court will deny the petition for writ of habeas corpus.

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make that showing, the applicant is required to demonstrate that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id*. at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, only if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id*. at 484.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because jurists of reason would not find this Court's resolution of his claims to be debatable. *See Strayhorn v. Booker*, 718 F. Supp. 2d 846, 854 (E.D. Mich. 2010). The Court will also deny petitioner leave to appeal *in forma pauperis* because the appeal would be frivolous. *Myers v. Straub*, 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).

### V. ORDER

Accordingly, the Petition for Writ of Habeas Corpus is DENIED.

The Court further DENIES a certificate of appealability.

The Court further DENIES petitioner leave to appeal *in forma pauperis*.

                                              <u>S/Lawrence P. Zatkoff</u>
                                              HON. LAWRENCE P. ZATKOFF
Dated: August 28, 2014                  UNITED STATES DISTRICT JUDGE